1
2
3
4
5
6
7
8
9
10

**IN THE UNITED STATES DISTRICT COURT**

11

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13  LAZARO S. COYOTZI, et al.,                    CASE NO. CV F 09-1036 LJO SMS

14                    Plaintiffs,        _____**ORDER ON COUNTRYWIDE DEFENDANTS'**
                                              **MOTION TO DISMISS**
15        vs.                                   (Doc. 8.)

16  COUNTRYWIDE FINANCIAL
    CORPORATION, et al.,
17
                      Defendants.
18  _____/

19                            **INTRODUCTION**

20        Defendants Countrywide Financial Corporation ("CFC") and Countrywide Home Loans, Inc.

21  ("CHL") seek to dismiss as meritless plaintiffs Larzaro S. Coyotzi and Seyla S. Coyotzi's (collectively

22  "plaintiffs'") 14 claims arising from loans, default and foreclosure on first and second mortgages on their

23  Modesto property ("property").  Plaintiffs respond that their claims are adequately pled.  This Court

24  considered CFC and CHL's F.R.Civ.P. 12(b)(6) motion to dismiss on the record, pursuant to Local Rule

25  78-230(h).  For the reasons discussed below, this Court DISMISSES this action against CFC and CHL.

26                            **BACKGROUND**

27                      **Plaintiffs' Loans And Default**

28        Plaintiffs are married and executed an October 19, 2005 InterestOnly Adjustable Rate Note

1

("note") in the amount of $384,000 payable to CHL as lender to refinance the property.[1]  The note provides for a 5.625 percent interest rate and $1,800 monthly payments during the first five years, after which the interest rate and monthly payment would be subject to change.

Plaintiffs executed an October 19, 2005 Deed of Trust ("first DOT") in connection with the note and which was recorded with the Stanislaus County Recorder.  The DOT provides that upon plaintiffs' default, CHL or its trustee may accelerate the amount due under the note and proceed with foreclosure of the property.

Plaintiffs executed and acknowledged receipt of an Interest-Only Feature Disclosure and a Truth In Lending Disclosure Statement in connection with the note.  These documents disclosed that plaintiffs during the first five months would have lower monthly payments which would not reduce the loan's principal and that their payments would increase as of December 1, 2010.

Plaintiffs executed a December 12, 2006 Note With Balloon Payment ("HELOC")[2] in the amount of $102,000 payable to defendant Landmark Home Mortgage, Inc. ("Landmark").  Plaintiffs executed a December 12, 2006 Deed of Trust and Request for Notice of Default ("second DOT") in connection with the HELOC and which was recorded with the Stanislaus County Recorder.  The second DOT provides that upon plaintiffs' default, Landmark or its trustee may accelerate the amount due under the HELOC and proceed with foreclosure of the property.

In connection with the HELOC, plaintiffs executed and acknowledged receipt of a Truth-In-Lending Disclosure Statement, which sets forth the HELOC's payment schedule.

Landmark assigned the second DOT to Countrywide Bank, N.A.  Effective February 1, 2007, the servicing rights of plaintiffs' HELOC were assigned to CHL.

Plaintiffs were unable to make payments on the note and HELOC and defaulted in August 2008.  According to plaintiffs, they sought loan modification but CFC and CHL presented less favorable terms.

**Plaintiffs' Claims**

Plaintiffs proceed on their original complaint ("complaint") filed March 20, 2009 in Stanislaus

---

[1]    The record is unclear whether the property served as plaintiffs' residence.

[2]    "HELOC" refers to home equity line of credit.

2

County Superior Court prior to removal to this Court.  In addition to CFC, CHL and Landmark, the complaint names as defendants real estate mortgage broker Genesis Capital Estates Group, Inc. ("Genesis"), loan officers Margarita Cruz ("Ms. Cruz") and Andrew Doan ("Mr. Doan"), and Mortgage Electronic Registration System, Inc. ("MERS").  The complaint's primary targets are CFC, CHL, Landmark, Genesis, Ms. Cruz and Mr. Doan (collectively the "lender defendants").  The complaint primarily alleges that the lender defendants failed to disclose properly loan terms and to advise plaintiffs that they could not afford the loans.  More specifically, the complaint alleges that CFC and CHL engaged in improper conduct by:

> . . . failing to take into account Plaintiff's [sic] income and/or falsely stating Plaintiff's [sic] income, failing to analyze Plaintiffs' DTI [debt-to-income] ratio, failing to provide Plaintiffs with adequate documentation, disclosures, notices and other information concerning the terms of the loan, misleading Plaintiff [sic] about the potential for refinancing the loans, obsfucating the potential for payment shock arising from the inevitable interest rate increases on the loans, misleading Plaintiff [sic] about the underwriting basis of the loans by suggesting that the primary basis for approving the loans was the equity in the Trust Property and that her [sic] monthly income was irrelevant, and by failing to advise Plaintiff [sic] that they intended to immediately assign and/or re-sell and/or securitize the loans in the secondary market.

The complaint alleges that through Landmark and Genesis, CFC and CHL engaged in similar improper conduct.

The complaint alleges 14 claims which this Court will address below and seeks to recover for "economic and non-economic harm."  The complaint further seeks injunctive and declaratory relief and punitive damages.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Standards

CFC and CHL attack the complaint's claims as vague and conclusory and on grounds that CFC and CHL "had no affirmative obligation to disclose to Plaintiffs that they could not afford their loan."

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint.  "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

*Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, the court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).   Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted).  A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts."  *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

4

1

2       . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  (Citation omitted.)

3

4     Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss.

5 *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts,*

6 *Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).   A

7 F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is

8 apparent on the complaint's face. *Jablon*, 614 F.2d at 682.  If the limitations defense does not appear

9 on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may

10 be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and*

11 *Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

12     For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the

13 complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).

14 Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d

15 at 1162, n. 2.   In addition, a "court may consider evidence on which the complaint 'necessarily relies'

16 if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3)

17 no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450

18 F.3d 445, 448 (9th Cir. 2006).  A court may treat such a document as "part of the complaint, and thus may

19 assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States*

20 *v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).  Such consideration prevents "plaintiffs from surviving a

21 Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are

22 based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).   A "court may disregard allegations

23 in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck*

24 *Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston*

25 *Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).  Moreover, "judicial notice may be taken of a fact to show

26 that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers,*

27 *Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th

28 Cir. 1997).  As such, this Court may consider plaintiffs' pertinent loan and foreclosure documents.

**Plaintiffs' Opposition**

Before addressing CFC and CHL's challenges to plaintiffs' claims, this Court notes that on August 13, 2009, plaintiffs filed papers to oppose CFC and CHL's F.R.Civ.P. 12(b)(6) motion to dismiss.  On August 12, 2009, plaintiff Larry S. Coyotzi had filed his Title 7 bankruptcy, and as such, this Court held in abeyance ruling on CFC and CHL's motion to dismiss.

On September 14, 2009, the bankruptcy trustee reported "there is no property available for distribution," certified that the estate "has been fully administered," and requested to be discharged.  As such, the trustee does not intend to pursue this action for the bankruptcy estate.  In the parties' September 14, 2009 joint status report, plaintiffs provide no meaningful points to delay ruling on CFC and CHL's motion to dismiss.

This Court has considered plaintiffs' conclusory opposition arguments which are based on platitudes and restatement of the complaint's allegations that CFC and CHL were part of "a predatory lending scheme."  Plaintiffs' arguments are unavailing to support what they characterize as "somewhat novel legal theories."  As discussed below, CFC and CHL successfully challenge plaintiffs' claims to warrant dismissal of this action against CFC and CHL.

**Negligence/Negligence Per Se**

The complaint's (first) negligence/negligence per se claim alleges that CFC and CHL owed duties to plaintiffs "concerning their duty to properly perform due diligence as to the loans" and owed a duty under federal and California laws to "provide proper disclosures concerning the terms and conditions of the loans they marketed, [and] to refrain from marketing loans they knew or should have known that borrowers could not afford or maintain . . ."

***Absence Of Duty***

CFC and CHL fault the negligence/negligence per se claim's failure to allege how CFC and CHL breached a general duty of care and facts to substantiate a special relationship with plaintiffs.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation omitted).  "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to

6

1   establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d

2   1089, 1095, 283 Cal.Rptr. 53 (1991).  "The existence of a legal duty to use reasonable care in a particular

3   factual situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.,*

4   118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

5        "The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care

6   in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the

7   person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is

8   actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm."

9   *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516

10  (1997).

11       CFC and CHL correctly note the absence of an actionable duty between a lender and borrower

12  in that loan transactions are arms-length and do not invoke fiduciary duties.  Absent "special

13  circumstances" a loan transaction "is at arms-length and there is no fiduciary relationship between the

14  borrower and lender." *Oaks Management Corp. v. Superior Court*, 145 Cal.App.4th 453, 466, 51

15  Cal.Rptr.3d 561 (2006).  Moreover, a lender "owes no duty of care to the [borrowers] in approving their

16  loan.  Liability to a borrower for negligence arises only when the lender 'actively participates' in the

17  financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d

18  27, 35, 161 Cal.Rptr. 516 (1980) (citing several cases).  "[A]s a general rule, a financial institution owes

19  no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed

20  the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283

21  Cal.Rptr. 53.

22       "Public policy does not impose upon the Bank absolute liability for the hardships which may

23  befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516.  The success of

24  a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to

25  protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any

26  information it may have had").

27       CFC and CHL further note the absence of an "affirmative duty to disclose to Plaintiffs that they

28  do not have the ability to repay their loan."  "No such duty exists" for a lender "to determine the

1   borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability

2   to repay by a borrower are for the lender's protection, not the borrower's." *Renteria v. United States*, 452

3   F.Supp.2d 910, 922-923 (D. Ariz. 2006) (borrowers "had to rely on their own judgment and risk

4   assessment to determine whether or not to accept the loan").

5          The negligence/negligence per se claim lacks a recognized legal duty owed by CFC and CHL.

6   The complaint further lacks facts of special circumstances to impose duties on CFC and CHL in that the

7   complaint depicts an arms-length home loan transaction, nothing more.   The complaint fails to

8   substantiate a special lending relationship with CFC and/or CHL.

9                                  ***Absence Of Statutory Violation***

10         The negligence/negligence per se claim alleges that plaintiffs "are among the class of persons

11  that Cal. Civ. Code section 1916.7, TILA, HOEPA, RESPA and Regulations X and Z[3] promulgated

12  thereunder were intended and designed to protect."

13         CFC and CHL contend that a negligence per se claim fails as a matter of law.   California

14  Evidence Code section 669(a) address negligence per se and provides a presumption of failure to

15  exercise due care if:

16         1.   Defendant "violated a statute, ordinance, or regulation of a public entity";

17         2.   "The violation proximately caused death or injury to person or property";

18         3.   "The death or injury resulted from an occurrence of the nature which the statute,

19              ordinance or regulation was designed to prevent"; and

20         4.   "The person suffering the death or injury to his person or property was one of the class

21              of persons for whose protection the statute, ordinance, or regulation was adopted."

22         The negligence per se doctrine does not establish a cause of action distinct from negligence.

23  "[A]n underlying claim of ordinary negligence must be viable before the presumption of negligence of

24  Evidence Code section 669 can be employed." *Cal. Service Station and Auto. Repair Ass'n v. American

25  Home Assurance Co.*, 62 Cal.App.4th 1166, 1178 (1998).   The negligence per se doctrine assists as

---

26   [3]      "TILA" refers to the Truth in Lending Act, 15 U.S.C. §§ 1601, et seq.   "HOEPA" refers to the Home
27  Ownership and Equity Protection Act, 15 U.S.C. §§ 1637, et seq.   "RESPA" refers to the Real Estate Settlement Procedures
    Act, 12 U.S.C. §§ 2601, et seq.   TILA implementing regulations are Regulation Z, 12 C.F.R. §§ 226, et seq.   RESPA's
28  implementing regulations are Regulation X, 24 C.F.R. §§ 3500, et seq.

evidence to prove negligence.  "[I]t is the tort of negligence, and not the violation of the statute itself, which entitles a plaintiff to recover civil damages. In such circumstances the plaintiff is not attempting to pursue a private cause of action for violation of the statute; rather, he is pursuing a negligence action and is relying upon the violation of a statute, ordinance, or regulation to establish part of that cause of action." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 333, 277 Cal.Rptr. 753 (1991).

The California Court of Appeals has explained:

> Thus, the doctrine of negligence per se does not establish tort liability. Rather, it merely codifies the rule that a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm that the plaintiff suffered as a result of the violation. . . . Even if the four requirements of Evidence Code section 669, subdivision (a), are satisfied, this alone does not entitle a plaintiff to a presumption of negligence *in the absence of an underlying negligence action.*

*Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256, 1285, 45 Cal.Rptr.3d 222 (2006) (citation omitted; italics in original).

CFC and CHL correctly note the conclusory allegations that they violated federal and California laws despite that plaintiffs' loan documents reveal compliance and that plaintiffs received required disclosures.  Moreover, in the absence of its viable duty, plaintiffs' negligence/negligence per se claim fails despite an attempt to invoke a statutory violation.  The complaint fails to delineate violation of a specific statute and the class of persons that a specific statute was intended to protect.  Despite whether the claim is packaged as negligence or negligence per se, it fails.

### *Limitations Defense*

The negligence/negligence per se claim is further barred by the two-year limitations period of California Code of Civil Procedure section 335.1.  The complaint's face reveals that plaintiffs executed the note on October 19, 2005 and the HELOC on December 12, 2006.  The complaint alleges wrongs arising more than two year prior to the March 20, 2009 filing of this action.  CFC and CHL correctly note that the limitations period expired no later than December 12, 2008 to render the

/ / /

/ / /

/ / /

1  negligence/negligence per se claim time barred.[4]

2  **Breach Of Contract And Breach Of The Implied Covenant**

3  **Of Good Faith And Fair Dealing**

4  The complaint's (second) breach of contract claim alleges that CFC and CHL "breached the

5  express and implied terms of written agreements between and among the parties, including . . . the right

6  of reinstatement and to be informed of any assignment of their obligations to a third party."

7  *Breach*

8  CFC and CHL challenge the claim's failure to identify a purported contract and breach.

9  "The standard elements of a claim for breach of contract are: '(1) the contract, (2) plaintiff's

10  performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff

11  therefrom.'"   *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178, 80

12  Cal.Rptr.3d 6 (2008).

13  The breach of contract claim fails to identify a specific contract and merely references "express

14  and implied terms of written agreements."  The claim makes no reference that CFC entered into a

15  contract with plaintiffs.  The claim further fails to identify a specific breach, including a breach by CHL

16  of the note, HELOC or first and second DOTs.  The complaint lacks allegations as to a breach of

17  plaintiffs' reinstatement right.

18  The breach of contract claim fails in the absence allegations of necessary elements.

19  *Implied Covenant*

20  The breach of contract claim further alleges that CFC and CHL "breached the covenant of good

21  faith and fair dealing implied in every contract in that they frustrated the reasonable expectations of

22  Plaintiffs to be able to service their loan obligations and to be able to engage in workout negotiations."

23  "There is an implied covenant of good faith and fair dealing in every contract that neither party

24  will do anything which will injure the right of the other to receive the benefits of the agreement."

25  *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000)

26  (quoting *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958)).  "The

27

28  [4]   Plaintiffs' claim that CFC and CHL's misconduct tolled limitations periods applicable to their negligence/negligence per se and other claims is unsubstantiated and unavailing.

10

prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Smith v. City and County of San Francisco*, 225 Cal.App.3d 38, 49, 275 Cal.Rptr. 17 (1990). "Without a contractual relationship, [plaintiffs] cannot state a cause of action for breach of the implied covenant." *Smith*, 225 Cal.App.3d at 49, 275 Cal.Rptr. 17.

The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004) (citation omitted.) "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 1120, 76 Cal.Rptr.3d 585 (2008). "The covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Agosta v. Astor*, 120 Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565 (2004) (quoting *Guz v. Bechtel Nat. Inc.* 24 Cal.4th 317, 349-350, 100 Cal.Rptr.2d 352 (2000)).

The breach of contract claim's conclusory allegations fail to plead an adequate breach of the implied covenant of good faith and fair dealing. The complaint lacks sufficient allegations of a contractual relationship with CFC. The complaint fails to allege a sufficient breach by CHL of an identified agreement. The complaint lacks allegations how CFC or CHL harmed plaintiffs' rights under a contract or prevented plaintiffs to receive contract benefits. Plaintiffs fail to substantiate a claim arising from frustration of workout negotiations. The complaint's attempt to allege breach of the implied covenant of good faith and fair dealing fails and likewise fails to resurrect a breach of contract claim.

### Breach Of Fiduciary Duty

The (third) breach of fiduciary duty claim alleges that CFC and CHL owed plaintiffs "a fiduciary duty of care with respect to the mortgage loan transactions" and breached duties to ensure that "their own and Plaintiffs' compliance with all applicable laws governing the loan transactions."

CFC and CHL challenge the breach of fiduciary duty claim in absence of allegations of a special relationship with plaintiffs.

11

1  "[T]o plead a cause of action for breach of fiduciary duty, there must be shown the existence of

2  a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any

3  one of these elements is fatal to the cause of action." *Pierce v. Lyman*, 1 Cal.App.4th 1093, 1101, 3

4  Cal.Rptr.2d 236 (1991).

5  "The relationship between a lending institution and its borrower-client is not fiduciary in nature."

6  *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53 (citing *Price v. Wells Fargo Bank,* 213

7  Cal.App.3d 465, 476-478, 261 Cal.Rptr. 735 (1989)).  A commercial lender is entitled to pursue its own

8  economic interests in a loan transaction. *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53(citing

9  *Kruse v. Bank of America,* 202 Cal.App.3d 38, 67, 248 Cal.Rptr. 217 (1988)).  Absent "special

10  circumstances" a loan transaction is "at arms-length and there is no fiduciary relationship between the

11  borrower and lender." *Oaks Management*, 145 Cal.App.4th at 466, 51 Cal.Rptr.3d 561 ("the bank is in

12  no sense a true fiduciary").

13  CFC and CHL are correct.  The complaint lacks necessary allegations of CFC and CHL's special

14  relationship with plaintiffs to create fiduciary duties.  The lender-borrower relationship does not impose

15  fiduciary duties on CFC and CHL in this case, especially given the complaint's conclusory allegations.

16  Plaintiffs' claim that CFC and CHL are predatory lenders is the antithesis of a fiduciary relationship.

17  The breach of fiduciary duty claim fails.

18  **Intentional Infliction Of Emotional Distress**

19  The (fourth) intentional infliction of emotional distress claim alleges that CFC and CHL's

20  conduct "was extreme and outrageous and not tolerated by civilized society" to cause plaintiffs to suffer

21  "severe emotional distress."

22  CFC and CHL argue that the claim is conclusory and fails to identify CFC and CHL's "extreme

23  and outrageous" actions.  Plaintiffs opposition papers do not address the intentional infliction of

24  emotional distress claim.

25  The elements of a cause of action for intentional infliction of emotional distress are: (1)

26  defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the

27  probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress;

28  and (4) an actual and proximate causal link between the tortious (outrageous) conduct and the emotional

12

distress.  *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 300, 253 Cal.Rptr. 97, 110 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989)*;Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987).  The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Davidson v. City of Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)).  Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

To support an intentional infliction of emotional distress claim, the conduct must be more than "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."  *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79 (1991).  The California Supreme Court has further explained:

> "The law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant." . . . The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory. . . .

*Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

"In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress."  *Ross v. Creel Printing & Publishing Co.,* 100 Cal.App.4th 736, 745, 122 Cal.Rptr.2d 787 (2002) (citing *Bundren v. Superior Court,* 145 Cal.App.3d 784, 789, 193 Cal.Rptr. 671 (1983)).  "Frequently, the creditor intentionally seeks to create concern and worry in the mind of the debtor in order to induce payment."  *Bundren,* 145 Cal.App.3d at 789, 193 Cal.Rptr. 671.  Such conduct is only outrageous if it goes beyond "all reasonable bounds of decency."  *Bundren,* 145 Cal.App.3d at 789, 193 Cal.Rptr. 671.

"The assertion of an economic interest in good faith is privileged, even if it causes emotional distress."  *Ross,* 100 Cal.App.4th at 745, n. 4, 122 Cal.Rptr.2d 787 (citing *Fletcher v. Western National*

1   *Life Ins. Co.,* 10 Cal.App.3d 376, 395, 89 Cal.Rptr. 78 (1970)); *Cantu v. Resolution Trust Corp.,* 4

2   Cal.App.4th 857, 888, 6 Cal.Rptr.2d 151 (1992).  "In debtor/creditor cases, the privilege is qualified, in

3   that it can be vitiated where the creditor uses outrageous and unreasonable means in seeking payment."

4   *Ross,* 100 Cal.App.4th 736, 745, n. 4, 122 Cal.Rptr.2d 787 (citing *Symonds v. Mercury Savings & Loan*

5   *Assn.,* 225 Cal.App.3d 1458, 1469, 275 Cal.Rptr. 871 (1990)).

6        The complaint fails to allege CFC and CHL's outrageous conduct to support intentional infliction

7   of emotional distress.  The complaint points to no conduct of CFC and CHL outside that generally

8   accepted in the foreclosure process, which is inherently stressful for debtors.  The intentional infliction

9   of emotional distress claim fails as to CFC and CHL on its merits.  The absence of plaintiffs attempt to

10  defend the claim amounts to their concession that the claim fails.  Moreover, the intentional infliction

11  of emotional distress is subject to the two-year limitations period of California Code of Civil Procedure

12  335.1 in that plaintiffs' claim arose from loan origination which extended to no later than December 12,

13  2006, more than two years prior to the March 20, 2009 filing of plaintiffs' complaint.

14                                      **Fraud**

15       The complaint's (fifth) fraud claim alleges that CFC and CHL misrepresented that plaintiffs

16  could refinance the property for more favorable terms, that CFC and CHL protected plaintiffs' financial

17  interest, and that plaintiffs' actual income "was irrelevant to the underwriting and/or loan approval

18  process."  The fraud claim further alleges that CFC and CHL concealed "information concerning the

19  false and misleading income information used to underwrite Plaintiffs' loans," information concerning

20  CFC and CHL's non-compliance with federal and state lending and securities laws, and related

21  information.

22       CFC and CHL challenge the fraud claim's failure to satisfy F.R.Civ.P. 9(b) requirements to

23  allege fraud with particularity.

24       F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[5]

25  _____

26       [5]   F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court
    will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the

27  Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule."  *Vess
    v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.

28  1995)(italics in original)).

                                          14

In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107. A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Cvi.P. ((b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit Court of Appeals has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

1997) ("fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity.")

As to multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Ca. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Ca. 1988)). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla. 1998)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 765 (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

Moreover, in a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."   *Tarmann v. State Farm Mut. Auto. Ins. Co.* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377 (1996).  The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois, Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action. *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce

16

1  the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

2  actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."

3  *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.

4      The complaint is severely lacking and fails to satisfy F.R.Civ.P. 9(b) "who, what, when, where

5  and how" requirements as to CFC, CHL and the other defendants.  The complaint makes no effort to

6  allege names of the persons who made the allegedly fraudulent representations, their authority to speak,

7  to whom they spoke, what they said or wrote, and when it was said or written.  The complaint lumps all

8  defendants without differentiating them. The complaint fails to establish fraud elements.  The fraud

9  allegations do not target particular defendants, and the complaint's global approach is unsatisfactory.

10  The fraud claim's deficiencies are so severe to suggest no potential improvement from an attempt to

11  amend.  Plaintiff's claim that CFC and CHL are in "a better position to know these facts" is unsupported

12  and unavailing.

13                                   **Lending Law Violations**

14                                   ***Insufficient Specificity***

15      The complaint's (sixth) violations of federal/state lending laws claim alleges that CFC and CHL

16  "violated Cal. Civ [sic] Code Section 1916.7, TILA, HOEPA, RESPA and the Regulations X and Z" by

17  "failing to provide all of the statutorily mandated disclosures required by these laws, engaging in a

18  pattern of marketing loans to borrowers (including Plaintiffs) without regard to their ability to pay . . ."

19      CFC and CHL fault the claim's failure "to allege with specificity which provisions of these

20  statutes were violated, or how."  CFC and CHL note that plaintiffs' loans were fully disclosed and that

21  CFC and CHL lacked a duty to advise plaintiffs that plaintiffs could not make their monthly payments.

22      CFC and CHL are correct.  The complaint fails to make out a claim under any of the cited state

23  or federal laws.

24                                   ***Limitations Periods***

25      CFC and CHL also raise limitations defenses to the claim.

26      A TILA damages claims is subject to 15 U.S.C. § 1640(e), which provides that an action for a

27  TILA violation must proceed "within one year from the date of the occurrence of the violation."  "TILA

28  requires that any claim based on an alleged failure to make material disclosures be brought within one

year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d 1176, 1183 (D. Or. 2005). The limitations period runs from the date of a transaction's consummation which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008). The Ninth Circuit Court of Appeals noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The [plaintiffs] were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed.

As to a HOEPA claim, "HOEPA is an amendment of TILA, and therefore is governed by the same remedial scheme and statutes of limitations as TILA." *Kemezis v. Matthew,* 2008 WL 2468377, at *3 (E.D. Pa. 2008) (citing *Harris v. EMC Corp.*, 2002 WL 32348324, *2 (E.D. Pa. 2002)).

A purported RESPA claim is susceptible to the one-year limitations period of 12 U.S.C. § 2614(a). The "primary ill" which RESPA seeks to remedy is "the potential for 'unnecessarily high settlement charges' caused by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services. This ill occurs, if at all, when the plaintiff pays for the service, typically at the closing." *Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359-360 (5th Cir. 2003) (quoting 12 U.S.C. §2601(a)).

The limitations periods for federal violations started no later than October 19, 2005 and December 12, 2006 when plaintiffs signed their loan documents. The March 20, 2009 filing of plaintiffs' complaint renders their federal statutory damages claims untimely. Plaintiffs raise no meaningful challenge to the running of the limitations period.

### **Deceptive Business Practices**

The complaint's (seventh) deceptive advertising and unfair business practices claim alleges that CFC and CHL "engaged in deceptive advertising and have committed a variety of unfair and unlawful business practices prohibited by Federal and State Law, including California Business and Professions Code Sections 17200 et seq. (Unfair Competition Law ["UCL"]) and 17500 et seq. (False Advertising Act), and 15 USC Section 45 et seq. (Deceptive Practices Act).

CFC and CHL correctly fault the "vague, conclusory" claim's absence of facts to demonstrate

which statutory provisions were violated or how.  Mere mention of a statutory violation is insufficient, and plaintiffs make no meaningful points to support the claim..

In addition, state statutory claims are subject to preemption.

"[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Bank of America v. City and County of S.F.*, 309 F.3d 551, 559 (9th Cir. 2002), *cert. denied*, 538 U.S. 1069, 123 S.Ct. 2220 (2003).  In *Silvas v. E*Trade Mortgage Corp.,* 421 F.Supp.2d 1315 (S.D. Cal. 2006), *aff'd*, 514 F.3d 1001 (9th Cir. 2008), a fellow district court held that the Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1461, et seq., preempted claims under the UCL if the UCL claims were predicated on TILA.  *See Reyes v. Downey Saving & Loan Ass'n*, 541 F.Supp.2d 1108, 1115 (C.D. Cal. 2008).  The court reasoned that "when federal law preempts a field, it does not leave room for the states to supplement it." *Silvas*, 421 F.Supp.2d at 1319 (citing *Rice v. Santa Fe Elev. Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). States may not avoid preemption by adopting federal laws and adding supplemental remedies. *Reyes*, 541 F.Supp.2d at 1115; *see Public Util. Dist. No. 1 of Grays Harbor Cty. Wash. v. IDACOR, Inc.*, 379 F.3d 641, 648-49 (9th Cir.2004).  "Plaintiffs' use of the UCL as predicated on TILA is preempted." *Reyes*, 541 F.Supp.2d at 1115; *see Nava v. Virtual Bank*, 2008 WL 2873406, at *7 (E.D. Cal. 2008) ("[F]or the same reason that plaintiff's UCL claim based on unfair or fraudulent business practices is preempted by federal law, plaintiff's UCL claim based on violation of TILA is also preempted. Moreover, plaintiff's UCL claim based on violation of TILA is also preempted by federal law since its application would supplement TILA by changing TILA's framework.")

Plaintiffs' state statutory claims appear tied to TILA or other federal law to render their state statutory claims preempted.  Plaintiffs are unable to avoid preemption in the guise of a state statutory claim, especially given the vague, conclusory allegations of unfair practices.

In addition, since plaintiffs' federal statutory claims are time barred, their state statutory claims based on federal statutory violations likewise fail.  "A court may not allow plaintiff to 'plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition.' " *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir.2000); *see Rubio v. Capital One Bank (USA)*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008) (since plaintiff's TILA claim failed, plaintiff's UCL

claim predicated on TILA likewise failed).  The time bar of plaintiffs' federal statutory claims bolsters

dismissal of their state statutory claims to prevent circumvention of federal statutory limitations periods.

### RICO Violation

The complaint's (eighth) civil RICO claim appears to attempt to allege violation of the Racketeer

and Corrupt Practices Act ("RICO"), 18 U.S.C. §§ 1961, et seq.  The claim alleges that CFC and CHL

were involved in an "unlawful Racketeering Enterprise" which "involved a shifting association of

persons and entities, some formally and others informally, the goal of which was to originate as many

mortgage loans as possible without regard for the borrowers ability to pay, and in violation of numerous

State and Federal Lending/Consumer Protection Laws."

CFC and CHL fault the claims failure to allege satisfactorily RICO elements.

Subsection (c) of 18 U.S.C. § 1962 ("section 1962") provides:

> (c) It shall be unlawful for any person employed by or associated with any enterprise
> engaged in, or the activities of which affect, interstate or foreign commerce, to conduct
> or participate, directly or indirectly, in the conduct of such enterprise's affairs through a
> pattern of racketeering activity or collection of unlawful debt.

A violation of § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim."

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275 (1985).  A "plaintiff only has standing

if, and can only recover to the extent that, he has been injured in his business or property by the conduct

constituting the violation."  *Sedima*, 473 U.S. at 496, 105 S.Ct. 3275.

For a RICO claim, an alleged "enterprise" requires an independent legal entity such as a

corporation or an "association in fact" of individuals.  18 U.S.C. § 1961(4).  The United States Supreme

Court has explained:

> The enterprise is an entity, for present purposes a group of persons associated together
> for a common purpose of engaging in a course of conduct. The pattern of racketeering
> activity is, on the other hand, a series of criminal acts as defined by the statute. 18 U.S.C.
> § 1961(1) (1976 ed., Supp. III). The former is proved by evidence of an ongoing
> organization, formal or informal, and by evidence that the various associates function as
> a continuing unit. The latter is proved by evidence of the requisite number of acts of
> racketeering committed by the participants in the enterprise. While the proof used to
> establish these separate elements may in particular cases coalesce, proof of one does not
> necessarily establish the other. The "enterprise" is not the "pattern of racketeering
> activity"; it is an entity separate and apart from the pattern of activity in which it engages.

1   *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524 (1981).

2   The complaint makes a conclusory reference to "a shifting association of persons and entities."

3   The complaint lacks sufficient allegations of an ongoing organization that functions as a unit.  The

4   complaint fails to allege how CFC, CHL and others constitute a RICO enterprise.

5   "Racketeering activity" is any act indictable under several provisions of Title 18 of the United

6   States Code.  *Rothman v. Vetter Park Management*, 912 F.2d 315, 316 (9ᵗʰ Cir. 1990); *see* 18 U.S.C. §

7   1961.  "Racketeering activity" also includes "any act or threat involving murder, kidnapping, gambling,

8   arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed

9   chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State

10   law and punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1)(A).

11   Subsection (5) of 18 U.S.C. § 1961("section 1961") defines "pattern of racketeering activity" to

12   require "at least two acts of racketeering activity, one of which occurred after the effective date of this

13   chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the

14   commission of a prior act of racketeering activity."  Section 1961"does not so much define a pattern of

15   racketeering activity as state a minimum necessary condition for the existence of such a pattern."  *H.J.,*

16   *Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893 (1989).  Section 1961(5) "says

17   of the phrase 'pattern of racketeering activity' only that it 'requires at least two acts of racketeering

18   activity, one of which occurred after [October 15, 1970,] and the last of which occurred within ten years

19   (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.' It

20   thus places an outer limit on the concept of a pattern of racketeering activity that is broad indeed."  *H.J.,*

21   *Inc.*, 492 U.S. at 237, 109 S.Ct. 2893.

22   "Section 1961(5) concerns only the minimum *number* of predicates necessary to establish a

23   pattern; and it assumes that there is something to a RICO pattern *beyond* simply the number of predicate

24   acts involved."  *H.J., Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900 (italics in original).  A pattern in not

25   formed by "sporadic activity."  *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900.  The term pattern requires

26   a relationship between predicates and the threat of continuing activity.  *H.J., Inc.*, 492 U.S. at 238, 109

27   S.Ct. at 2900.  The factor of continuity plus relationship combines to produce a pattern.  *H.J., Inc.*, 492

28   U.S. at 239, 109 S.Ct. at 2900.  "RICO's legislative history reveals Congress' intent that to prove a

pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900.

The complaint lacks sufficient allegations that CFC and CHL engaged in an enterprise or two or more criminal acts to support a pattern of racketeering activity under sections 1961(5) and 1962. The complaint fails to allege that plaintiffs' loans constitute an unlawful debt, that is, an illegal gambling debt or debt with an interest rate "at least twice the enforceable rate." *Reidy v. Meritor Sav., F.S.B.,* 705 F.Supp. 39, 40 (D. D.C. 1989).

The complaint further fails to satisfy the damages requirement for a RICO claim. The "plain language" of pertinent RICO provisions "leads us to conclude that a plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.,* 981 F.2d 429, 437 (9th Cir. 1992), *cert. denied*, 508 U.S. 908, 113 S.Ct. 2336 (1993).

The RICO claim is vitiated in the absence of sufficient facts of an enterprise, racketeering activity, pattern of racketeering activity, unlawful debt and recoverable damages. The complaint alleges no injury to plaintiffs' business or property by a racketeering activity or sufficiently alleged violation identified under RICO. The complaint is devoid of facts to satisfy sections 1961 and 1962. Plaintiffs offer no meaningful support for the civil RICO claim.

### Injunctive Relief

The complaint's (ninth) injunctive relief claim alleges that plaintiffs' property was foreclosed upon on January 12, 2009 and seeks to prohibit CFC and CHL "from proceeding with any further sale" of the property in that "a genuine controversy exists as to whether the Trustee's Sale is a valid and lawful exercise."

CFC and CHL argue that the injunctive relief claim's "vague, conclusory allegations" fail to demonstrate likelihood of success on plaintiffs' claims or that they are entitled to injunctive relief.

The traditional equitable criteria for granting preliminary injunctive relief are:

1.    A strong likelihood of success on the merits;

2.    The possibility of irreparable injury to the moving party if injunctive relief is denied;

1    3.    A balance of hardships favoring the moving party; and

2    4.    Advancement of public interest.

3  *Textile Unlimited, Inc. v. A.BMH and Company, Inc.*, 240 F.3d 781, 786 (9th Cir. 2001) (citing *Los*

4  *Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980)).

5    "In this circuit, the moving party may meet its burden by demonstrating either (1) a combination

6  of probable success on the merits and the possibility of irreparable injury or (2) that serious questions

7  are raised and the balance of hardships tips sharply in its favor." *Los Angeles Mem'l Coliseum Comm'n*,

8  634 F.2d at 1201.

9    Plaintiffs offers nothing to support their injunctive relief claim.  As reflected throughout this

10 order, plaintiffs fail to demonstrate a likelihood of success on the merits given dismissal of their claims.

11   Moreover, "[e]quity will not interpose its remedial power in the accomplishment of what

12 seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a

13 field where there has been no proof as to what beneficial purpose may be subserved through its

14 intervention." *Karlsen v. American Sav. & Loan Ass'n*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851

15 (1971).  As such, to enjoin a foreclosure sale due to non-judicial foreclosure defects, the trustor must in

16 good faith tender amounts to cure the default. *See Karlsen*, 15 Cal.App.3d at 117, 92 Cal.Rptr. 851.  The

17 complaint lacks allegations of a tender to cure defaults, and the injunctive relief claim is premised on

18 prior defective claims.  Plaintiff Lazaro Coyotzi's Chapter 7 bankruptcy filing reflects plaintiffs' inability

19 to cure their defaults.

20   "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist

21 before injunctive relief may be granted." *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930

22 (1942).  The injunctive relief claim is doomed with the complaint's other claims.

23                **Declaratory Relief**

24   The complaint's (tenth) declaratory relief claim seeks determination as to who has "true title"

25 to the property and whether the note secured by the first DOT "is void or voidable due to fraud or

26 mistake."

27   CFC and CHL contend that the declaratory relief claim fails given that it "is based upon the same

28 insufficient allegations upon which [plaintiffs'] other claims are based.  Because none of the other causes

                23

1   of action state a claim, Plaintiffs cannot state a claim for declaratory relief."

2                                    *Actual Controversy*

3         Since CFC and CHL removed plaintiffs' action from state court, the declaratory relief claim

4   appears subject to evaluation under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.[6] The DJA

5   and its 28 U.S.C. § 2201(a) provides in pertinent part:

6                In a case of actual controversy within its jurisdiction . . . any court of the United
             States, upon the filing of an appropriate pleading, may declare the rights and other legal
7            relations of any interested party seeking such declaration, whether or not further relief
             is or could be sought.  Any such declaration shall have the force and effect of a final
8            judgment or decree and shall be reviewable as such.

9         The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,

10  300 U.S. 227, 240, 57 S.Ct. 461, 463 (19 ).  A DJA action requires a district court to "inquire whether

11  there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d

12  142, 143-144 (9th Cir. 1994).

13        As to a controversy to invoke declaratory relief, the question is whether there is a "substantial

14  controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant

15  the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270,

16  273, 61 S.Ct. 510, 512 (1941).  The United States Supreme Court has further explained:

17           A justiciable controversy is thus distinguished from a difference or dispute of a
             hypothetical or abstract character; from one that is academic or moot. . . . The
18           controversy must be definite and concrete, touching the legal relations of parties having
             adverse legal interests. . . . It must be a real and substantial controversy admitting of
19           specific relief through a decree of a conclusive character, as distinguished from an
             opinion advising what the law would be upon a hypothetical state of facts.
20

21  *Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

22        Plaintiffs attempt to manufacture a declaratory relief claim on grounds that the parties differ

23  whether  non-judicial foreclosure and a trustee's sale are proper based on what plaintiffs characterize

24  as inadequate loan disclosures.  CFC and CHL are correct that the complaint "does not establish the

25  existence of any independent actual or present controversy." As such, there is no actual controversy

26  subject to declaratory relief in that plaintiffs' potential relief lies elsewhere.  A declaratory relief action

27

28        [6]        This Court is uncertain why CFC and CHL refer to California Code of Civil Procedure section 1061.

                                                    24

"brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981).

The key problem is that the declaratory relief claim fails to articulate an available judicial declaration. It merely points to a purported controversy regarding foreclosure and trustee's sale of the property. Without more, there is no actual controversy subject to declaratory relief, especially given the failure of plaintiffs' claims. Plaintiffs offer nothing to substantiate a declaratory relief claim to warrant its dismissal.

### Rescission

With the complaint's (eleventh) rescission claim, plaintiffs "offer to restore" to CFC and CHL the property "in return for all sums paid by Plaintiffs."

CFC and CHL fault rescission as a remedy, not a cause of action. CFC and CHL note the absence of allegations that the note, HELOC, first and second DOTs, or foreclosure are invalid in that the loans were properly disclosed.

CFC and CHL are correct that "[r]escission is not a cause of action; it is a remedy." *Nakash v. Superior Court*, 196 Cal.App.3d 59, 70, 241 Cal.Rptr. 578 (1987). As such, the rescission claim fails.

Moreover, a rescission remedy is subject to a laches defense due to plaintiffs' delay to pursue such a remedy. "A party who delays in seeking the remedy of rescission may forfeit the right to rescind where the delay substantially prejudiced the other party." *CitiCorp. Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1103 (9th Cir. 1998). "The basic elements of laches are: (1) an omission to assert a right; (2) a delay in the assertion of the right for some appreciable period; and (3) circumstances which would cause prejudice to an adverse party if assertion of the right is permitted." *Stafford v. Ballinger*, 199 Cal.App.2d 289, 296, 18 Cal.Rptr. 568 (1962).

Plaintiffs' delay to seek rescission is unjustified, especially given plaintiffs' lack of meaningful opposition. Laches bolsters dismissal of the rescission claim.

### Set Aside Trustee's Sale And Quiet Title

The complaint's (twelfth) set aside trustee's sale and quiet title claim alleges that CFC and CHL lack an "estate, lien or interest" in the property to warrant setting aside the trustee's sale and quieting title in the property in plaintiffs' favor.

1    CFC and CHL note that the only alleged grounds to quiet title is CHL's inability to conduct non-

2  judicial foreclosure without producing the original note.

3    Like many other borrowers subject to foreclosure, plaintiffs appear to claim that CFC and CHL

4  need to possess or produce the original promissory note to permit foreclosure.  Such is not the case in

5  California.

6    "If the trustee's deed recites that all statutory notice requirements and procedures required by law

7  for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has

8  been conducted regularly and properly." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440, 129 Cal.Rptr.2d

9  436 (2003).  The California Court of Appeal has explained non-judicial foreclosure under California

10  Civil Code sections 2924-2924l:

11          The comprehensive statutory framework established to govern nonjudicial
       foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating
12      to notice and right to cure. It would be inconsistent with the comprehensive and
       exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another
13      unrelated cure provision into statutory nonjudicial foreclosure proceedings.

14  *Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994).

15    Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of

16  their authorized agents" may conduct the foreclosure process.  Under California Civil Code section

17  2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent

18  for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed

19  substitution of trustee, or an agent of that substituted trustee."  "Upon default by the trustor, the

20  beneficiary may declare a default and proceed with a nonjudicial foreclosure sale."  *Moeller*, 25

21  Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

22    "Under Civil Code section 2924, no party needs to physically possess the promissory note."

23  *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, §

24  2924(a)(1)).  Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and

25  election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.  An "allegation that

26  the trustee did not have the original note or had not received it is insufficient to render the foreclosure

27  proceeding invalid."  *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

28    The complaint alleges that CHL's trustee, Recontrust Co., provided plaintiffs notices of default

26

1   and trustee's sale.  Recontrust Co., as trustee, was statutorily authorized to proceed with non-judicial

2   foreclosure.  A claim to quiet title based on failure to produce note claim is incognizable and fails.

3       Moreover, a trustor/borrower is unable to "quiet title without discharging his debt. The cloud

4   upon his title persists until the debt is paid." *Aguilar v. Bocci,* 39 Cal.App.3d 475, 477, 114 Cal.Rptr.

5   91 (1974).  The complaint fails to allege plaintiffs' tender of borrowed amounts or ability to so tender.

6   Plaintiff Lazaro Coyotzi's recent bankruptcy filing with its no assets discharge negates reasonable

7   expectation of plaintiffs' ability to tender.  The complaint lacks a factual or legal basis to challenge the

8   trustee's sale and to establish a basis for plaintiffs to seek to quiet title in their favor.

9   **Accounting**

10  The complaint's (thirteenth) accounting claim appears to seek an accounting or determination

11  of the amount plaintiffs owe.

12  CFC and CHL argue that the accounting claim fails as a matter of law given that plaintiffs are

13  not entitled to an accounting.

14  An accounting cause of action is equitable and may be sought where the accounts are so

15  complicated that an ordinary legal action demanding a fixed sum is impracticable.  *Civic Western Corp.*

16  *v. Zila Industries, Inc.,* 66 Cal.App.3d 1, 14, 135 Cal.Rptr. 915 (1977).  A suit for an accounting will not

17  lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law.

18  *Civic Western,* 66 Cal.App.3d at 14, 135 Cal.Rptr. 915.  An accounting will not be accorded with respect

19  to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain.  *Civic Western,*

20  66 Cal.App.3d at 14, 135 Cal.Rptr. 915.

21  "A right to an accounting is derivative; it must be based on other claims."  *Janis v. California*

22  *State Lottery Com.*, 68 Cal.App.4th 824, 833-834, 80 Cal.Rptr.2d 549 (1998).

23  The complaint lacks allegations of complexity to warrant an accounting to plaintiffs.  Given the

24  failure of plaintiffs' claims, plaintiffs lack a derivative basis to support an accounting.  The complaint

25  fails to invoke this Court's equity powers to provide plaintiffs accounting relief to warrant dismissal of

26  the accounting claim.

27  **Punitive Damages**

28  The complaint's (fourteenth) punitive damages claim alleges that CFC and CHL's conduct "was

despicable, was carried on with malice, fraud and oppression, and in conscious disregard of the rights of Plaintiffs" to warrant punitive damages.

CFC and CHL argue that the claim fails as conclusory and in the absence of facts to support punitive damages.

California Civil Code section 3294 ("section 3294") provides that in an action "for breach of an obligation not arising from contract," a plaintiff may seek punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code, § 3294(a).

"Although the court will apply the substantive law embodied in section 3294, 'determinations regarding the adequacy of pleadings are governed by the Federal Rules of Civil Procedure.'" *Jackson v. East Bay Hosp.*, 980 F.Supp. 1341, 1353 (N.D. Cal. 1997).

Punitive damages are "available to a party who can plead and prove the facts and circumstances set forth in Civil Code section 3294." *Hilliard v. A.H. Robbins Co.*, 148 Cal.App.3d 374, 392, 196 Cal.Rptr. 117 (1983). "To support punitive damages, the complaint . . . must allege ultimate facts of the defendant's oppression, fraud, or malice." *Cyrus v. Haveson*, 65 Cal.App.3d 306, 316-317, 135 Cal.Rptr. 246 (1976). Pleading the language in section 3294 "is not objectionable when sufficient facts are alleged to support the allegation." *Perkins v. Superior Court*, 117 Cal.App.3d 1, 6-7, 172 Cal.Rptr. 427 (1981).

In *G.D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22, 29, 122 Cal.Rptr. 218 (1975), the California Court of Appeal explained punitive damages pleading:

> When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure. . . . When nondeliberate injury is charged, allegations that the defendant's conduct was wrongful, willful, wanton, reckless or unlawful do not support a claim for exemplary damages; such allegations do not charge malice. . . . When a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him. (Citations omitted.)

"Allegations that the acts . . . were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere conclusions of law . . ." *Faulkner v. California Toll Bridge Authority*, 40 Cal.2d 317, 329, 253 P.2d 659 (1953); *see Letho v. Underground Construction Co.*, 69 Cal.App.3d 933, 944, 138 Cal.Rptr. 419 (1997) (facts and circumstances of fraud should be set out clearly, concisely, and with sufficient particularity to support punitive damages); *Smith*

*v. Superior Court*, 10 Cal.App.4th 1033, 1042, 13 Cal.Rptr.2d 133 (1992) (punitive damages claim is insufficient in that it is "devoid of any factual assertions supporting a conclusion petitioners acted with oppression, fraud or malice."); *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 872, 141 Cal.Rptr. 200 (1977) ("conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud, or malice, express or implied,' within the meaning of section 3294").

Punitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases. *Henderson v. Security Pacific National Bank*, 72 Cal.App.3d 764, 771, 140 Cal.Rptr. 388 (1977).

The punitive damages claim is conclusory and merely includes the words "despicable," "malice," "fraud," and "oppression" without illustrative facts. The complaint lacks specific allegations of CFC and CHL's wrongdoing to impose punitive damages. The complaint fails to provide adequate notice of alleged conduct to support punitive damages. Moreover, the failure of plaintiffs' other claims warrants dismissal of the punitive damages claim.

**CFC Vicarious Liability And Motion To Strike**

With dismissal of plaintiffs' claims, this Court need not address CFC's contention that it is not liable for CHL's alleged wrongs and CFC and CHL's motion to strike.

**Attempt At Amendment And Malice**

Plaintiffs' claims are incognizable or barred as a matter of law. Plaintiffs are unable to cure their claims by allegation of other facts and thus are not granted an attempt to amend.

Moreover, this Court is concerned that plaintiffs have brought this action in absence of good faith and that plaintiffs exploit the court system solely for delay or to vex defendants. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th

1   Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action.

2                                    **CONCLUSION AND ORDER**

3          For the reasons discussed above, this Court:

4   1.      DISMISSES this action with prejudice against CFC and CHL;

5   2.      DIRECTS the clerk to enter judgment in favor of defendants Countrywide Financial

6           Corporation and Countrywide Home Loans, Inc. and against plaintiffs Lazaro S. Coyotzi

7           and Seyla S. Coyotzi;

8   3.      ORDERS plaintiffs, no later than September 25, 2009, to file papers to show cause why

9           this Court should not dismiss this action against defendants Landmark Home Mortgage,

10          Inc., Genesis Capital Estates Group, Inc., Andrew Doan, Margarita Cruz and Mortgage

11          Electronic Registration Systems, Inc.

12         **This Court ADMONISHES plaintiffs that this Court will dismiss this action against**

13   **defendants Landmark Home Mortgage, Inc., Genesis Capital Estates Group, Inc., Andrew Doan,**

14   **Margarita Cruz and Mortgage Electronic Registration Systems, Inc. if plaintiffs fail to comply**

15   **with this order and fail to file timely papers to show cause why this Court should not dismiss**

16   **defendants Landmark Home Mortgage, Inc., Genesis Capital Estates Group, Inc., Andrew Doan,**

17   **Margarita Cruz and Mortgage Electronic Registration Systems, Inc.**

18          IT IS SO ORDERED.

19   **Dated:    September 15, 2009             /s/ Lawrence J. O'Neill**
                                         UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

                                            30